Opinion issued August 3, 2006














In The
Court of Appeals
For The
First District of Texas




NO. 01-05-01014-CR




WESLEY WAYNE HANSEN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 1040132




O P I N I O NAfter a bench trial, the trial court found appellant guilty of stalking and
assessed punishment at four years’ confinement. On appeal, appellant contends that 
(1) the evidence is legally insufficient to support the conviction and (2) the trial court
erred in denying his motion to suppress. We affirm.BACKGROUND
          Appellant was hired by Patrick Morrison, owner of an equestrian riding center,
to perform odd jobs around Morrison’s property in exchange for room and board. 
Morrison and his family—his wife, Aylisa, and his two daughters, Brooke, 11, and
Markee, 9—lived in a house situated on the same tract of land as the equestrian
center. Appellant lived in a small one-room guest house with a kitchen and
bathroom. About a month after appellant had moved into the guest house, appellant
gave Morrison a painting he had done. The painting depicted a nude female jumping
a horse over a Harley-Davidson motorcycle. Morrison stated that he believed the
female in the painting to be his 11-year-old daughter, Brooke. Morrison did not take
any action against appellant at this time.
          About a month after that, Brooke was approached by appellant in a community
bathroom in the horse barn with a picture he said he had painted for her. This picture
depicted a heart, upheld by three stakes in the ground, dripping blood into an open
hole. Around this same time, Brooke found on top of her “tack box” (a horse supply
storage container located in the barn area) a note saying, “Waiting . . . Silently
Screaming, I Love You.” Brooke told her mother, Aylisa, about the painting and the
note. Aylisa, when appellant was not in his quarters, went into the guest-house and
found some poems and poem fragments with the “silently, screaming” language,
including one titled “Ode to Brook”:
                                         Waiting . . . 
                                         Silently Screaming, I Love You
                                         Wondering—will you forever
                                         be my mystery  
                                         my muse
                                         my guide through the dark forest

          The Morrisons, via a friend of theirs, Michael Blair, asked appellant to gather
his belongings and leave the property. He did, but returned at night a few days later
and, in the horse barn, placed a painting of a young woman arising from a flower,
which workers found the next morning. Aylisa Morrison testified that she believed
the young woman in the picture to be Brooke. At around this same time, appellant
also left another painting on Brooke’s tack box that said “LOVE” on it with broken
glass glued-on. This painting, along with all the others found, had a “W” on the back
of it. 
           A few months later, appellant showed up at the Morrison’s house and asked to
speak with Patrick. Patrick was unavailable, but Aylisa, warned by Blair that
appellant might be inquiring at their house for Patrick, brandished a shotgun at
appellant and told him to leave the premises because she “had 911 on the phone.” 
Appellant left and was later arrested and charged with stalking.


 
          Before trial, appellant filed a motion to suppress two pieces of evidence: the
“Ode to Brooke” poem and the other fragments of poems with the “silently
screaming” language. In his motion to suppress, appellant asserted that when Aylisa
Morrison entered the guest-house and confiscated the evidence, she had violated his
Fourth Amendment rights,


 his rights under article I, section 9 of the Texas
Constitution,


 and article 18.04 of the Code of Criminal Procedure.


 The trial court
carried the motion with the trial. When the State introduced the exhibits at trial,
appellant reminded the judge that the motion to suppress was being “carried along,”
and the trial court ruled, “They will be conditionally admitted at this time subject to
the motion.” After the State rested, appellant re-urged the motion to suppress,
arguing that under “the Fourth Amendment as well as the State law article 38.22,
38.23, I believe the evidence is clear that [appellant] was living in that place when
Mrs. Morrison went into the guest room . . . and took away [the poem and poem
fragments].” The trial court denied the motion to suppress.
                                                    Legal Sufficiency
          In his first point of error, appellant asserts that the evidence is legally
insufficient to support his conviction for stalking. The standard for reviewing the
legal sufficiency of the evidence is whether, after reviewing the evidence in the light
most favorable to the verdict, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318–19, 99 S. Ct. 2781, 2788–89 (1979).
          The offense of stalking, under article 42.072 of the Texas Penal Code, provides
in relevant part:
 (a) A person commits an offense if the person, on more than one
occasion and pursuant to the same scheme or course of conduct that is
directed specifically at another person, knowingly engages in conduct,
including following the other person, that:
 
(1) the actor knows or reasonably believes the other person will
regard as threatening:
(A) bodily injury or death for the other person;
(B) bodily injury or death for a member of the other
person’s family or household; or
(C) that an offense will be committed against the other
person's property;
(2) causes the other person or a member of the other person’s
family or household to be placed in fear of bodily injury or death
or fear that an offense will be committed against the other
person’s property; and
(3) would cause a reasonable person to fear:
(A) bodily injury or death for himself or herself;
(B) bodily injury or death for a member of the person’s
family or household; or
(C) that an offense will be committed against the person’s
property.

Tex. Penal Code Ann. § 42.072 (Vernon 2003).
          Appellant first argues that there was no evidence that his conduct, as alleged
in the indictment, was directed at Aylisa; rather, he contends, it was directed at
Brooke. However, the statute specifically provides that the “course of conduct” does
not have to be directed at only the complainant, but can be conduct that the
complainant would regard as threatening bodily injury (or death) to a family member. 
Id. at § 42.072 (a)(1)(B). This is the case under the facts in the present case. Aylisa
testified that she felt that appellant’s conduct threatened the safety of Brooke, her
daughter. 
          In his next argument, appellant argues that there was no evidence that he
“followed” Aylisa when he snuck back onto the Morrison’s property and left the third
and fourth paintings for Brooke, and then returned a few months later to the house,
ostensibly in search of Patrick. The Code does not define the word “followed”;
therefore, we apply the plain meaning of the word. Lane v. State, 933 S.W.2d 504,
514 (Tex. Crim. App. 1996). Webster’s Unabridged Dictionary defines “follow” as
“ . . . to go or come after; move behind in the same direction; . . . to go in pursuit of;
. . . to try for or attain to; . . . to engage in or be concerned as a pursuit; . . . .” 
Webster’s Unabridged Dictionary 744 (2d ed. 2001). The term has also been
construed broadly in the case law interpreting the statute. See, e.g., Ploeger v. State,
189 S.W.3d 799, 808–09 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that
appellant’s conduct of, among other things, repeatedly sending flowers, gifts, and
cards to complainant, and sitting in close proximity to her at church after being asked
not to by church leaders, and waiting for her in church parking lot constituted
“following for purposes of stalking statute”); Clements v. State, 19 S.W.3d 442, 448
(Tex. App.—Houston [1st Dist.] 2000, no pet.) (holding that appellant’s conduct of
repeatedly showing up at complainant’s house when he did not reside there and
“causing himself to be where he knew [complainant] would be” constituted
“following” for purposes of stalking statute). We hold that a rational trier of fact
could have found that appellant’s conduct fell within the plain meaning of the word
“follow.” Sneaking back onto the property and leaving the paintings for Brooke,
were actions that could have been construed as appellant’s acting “in pursuit of”
Brooke or attempting to “attain” her affections or attention.  
          Appellant next argues that there was no evidence of another essential element
of the offense: that he knew or reasonably believed Aylisa Morrison would regard his
leaving the third and fourth paintings and showing up at the Morrison home a few
months later inquiring after Patrick as threatening bodily injury toward Aylisa or
Brooke. 
          The evidence shows that after he left (or gave) the first two paintings to Brooke
and Aylisa found the poems to Brooke in appellant’s quarters, appellant was asked
to leave the Morrison’s property by Michael Blair. In each of the instances of
conduct charged in the indictment—sneaking back onto the property to leave the third
and fourth paintings and returning to the property a few months later—it would have
been reasonable for the fact finder to infer that appellant, knowing that he had been
asked to leave for giving paintings to the complainant’s 11-year-old daughter because
of their questionable content, knew or reasonably believed that returning to the
property (whether to leave paintings at night or to return to the property during the
daylight) would cause Aylisa to feel threatened that he intended bodily injury to
Brooke. Therefore, we reject appellant’s argument. 
          Accordingly, we overrule his first point of error.
Motion To Suppress
          Appellant’s second point of error is that the trial court erred in denying his
motion to suppress.
          The State argues that appellant waived this point of error on appeal. The State
contends that appellant had the burden to raise an exclusionary issue by producing
evidence of a statutory violation, and if the evidence was not obtained in violation of
any law, then it was properly admitted at trial. Because, according to the State,
appellant did not produce evidence of a statutory violation, he waived his point of
error.
          To be precise, the “burden of proof is initially on the defendant to raise the
exclusionary issue,” and then the burden shifts to the State to prove that it complied
with the law’s requirements. Pham v. State, 175 S.W.3d 767, 772 (Tex. Crim. App.
2005) (emphasis added); see also Corpus v. State, 931 S.W.2d 30, 32 (Tex.
App.—Austin 1996, pet. dism’d). 
          At trial, appellant argued
I would move to suppress [the evidence] on the Fourth Amendment as
well as the State law article 38.22, 38.23.


 I believe the evidence is clear
that my client, Mr. Hansen, was living in that place when [Aylisa] went
into the guest room . . . and seized and took away [the poems]; . . . I
think that [the] testimony [] from all the State’s witnesses is that he
was—Mr. Hansen was living there.

We conclude that this was enough to notify the trial court, with sufficient specificity,
of appellant’s objection that Aylisa’s actions amounted to a violation of the laws of
Texas and his request that the evidence be excluded under article 38.23.


 Young v.
State, 826 S.W.2d 141, 150 (Tex. Crim. App. 1991). Appellant has not waived his
point of error.
          We now turn to the merits of appellant’s claim. Article 38.23 provides that no
evidence obtained by an officer or person in violation of the Constitution or laws of
the State of Texas shall be admitted in evidence against the accused in a criminal
case. Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005). In Jenschke v.
State, the Court of Criminal Appeals held that, when a non-governmental actor takes
property that is evidence of a crime without the consent of the owner and with the
intent to turn the evidence over to the police, article 38.23 may not be triggered and
the evidence may not have to be excluded. 147 S.W.3d 398, 402 (Tex. Crim. App.
2004). The question for a court in a case of criminal law is whether the non-governmental actor’s conduct violated a law of the State of Texas. Id. at 403. We
then look at the evidence to determine whether it is sufficiently clear for us to
determine the intent of the non-governmental actor. Id. That is, did this non-governmental actor take the evidence with the intent to turn it over to law
enforcement authorities.
          Here, Aylisa took appellant’s poems and poem fragments from his guesthouse
and clearly intended to deprive appellant of this property. However, she took the
evidence with the intent to turn it over the police. Aylisa testified that after she and
her husband discussed the contents of the poems found in appellant’s quarters, they
decided to call the police. When the police arrived she showed them the poems. A
rational trier of fact could have concluded that she took the evidence with the intent
of turning it over to the police and, therefore, did not commit a burglary. We hold
that the trial court did not abuse its discretion in admitting the evidence. Cf.
Jenschke, 147 S.W. 3d at 402–03 (holding that when parents of sexual assault victim
broke into vehicle of person whom their daughter had told them attacked her and
obtained evidence, but did not turn that evidence over to police for two years, article
38.23 requires exclusion of that evidence). 
          Accordingly, we overrule appellant’s second point of error.
                     CONCLUSION 
          We affirm the judgment of the trial court.
 
                                                                        Sam Nuchia
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Taft and Nuchia.

Publish. Tex. R. App. P. 47.2(b).